**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SARAH SCHMIEDER, individually and on behalf of a nationwide class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>NORTHWEST COLLECTORS, INC.,<br><br>Defendant. | Case No. 1:19-cv-05457<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiff SARAH SCHMIEDER ("Plaintiff") by and through her attorney, James C. Vlahakis, brings this this civil action pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.,* for statutory damages, declaratory relief and injunctive relief:

## I. Introduction

1. Plaintiff is a resident of this judicial District and between June, 2019, to present day (hereafter, "the time of the calls in question"), her cellular telephone number has been 630-XXX-2412.[1]

2. Defendant NORTHWEST COLLECTORS, INC. ("Northwest" or "Defendant") is being sued because it called Plaintiff's cellular telephone number in violation of the TCPA.

3. The TCPA makes it unlawful for a person to call another person's cellular telephone using an "automatic telephone dialing system" or "artificial or prerecorded

[1] If requested by Defendant, Plaintiff's counsel will provide Defendant with Plaintiff's complete number. Accordingly, Plaintiff's decision to not list her full number in this public filing is not an invitation for Defendant to answer whether it called Plaintiff by stating that it "lacks knowledge or information sufficient to form a belief about the truth of an allegation."

voice" without the express consent of the person being called. 47 U.S.C. § 227(b)(1)(A)(iii).

4. During the time of the calls in question, Defendant called Plaintiff's cellular telephone number without her express permission for the purpose of attempting to collect a debt stemming from a red light violation ("subject debt").

5. Each of the calls caused by Defendant violated the TCPA because Defendant's calls were placed with an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1) and the calls were placed without Plaintiff's permission.

6. Defendant violated Section 227(b)(1)(A)(iii) of the TCPA because on certain occasions when Plaintiff did not answer Defendant's calls, Defendant would leave Plaintiff a pre-recorded voicemail message.

7. Defendant violated Section 227(b)(1)(A)(iii) of the TCPA because it did not have Plaintiff's permission to call her cellular phone number with an ATDS or leave pre-recorded messages on her voicemail.

**II. Parties, Jurisdiction and Venue**

8. During the relevant time period of June 2019, to the present day, Plaintiff was a citizen and resident of the State of Illinois, and a natural "person" as defined by 47 U.S.C. §153(39).

9. During the relevant time-period of June 2019, to the present day, Plaintiff's cellular telephone number was 630-XXX-2412 (hereafter "Plaintiff's cellular number").

10. Defendant is incorporated under the laws of the State of Delaware and is headquartered in Rolling Meadows, Illinois.

11. Defendant is, and at all times mentioned herein was, a corporation and a "person" as defined by 47 U.S.C. §153(39).

12. Subject matter jurisdiction exists pursuant to 28 U.S.C. §§1331 and 1337 because this is a civil action for damages arising pursuant to the TCPA and this case arises out of violation of federal law.

13. Venue is proper in the Northern District of Illinois ("District") pursuant to 18 U.S.C. § 1391(b) because Plaintiff resides in this District and Defendant is subject to personal jurisdiction within this District by virtue of the fact that it has conducted significant and continuous business conduct within the District.

14. Venue and personal jurisdiction exist in this District pursuant to U.S.C. §§ 1391(b)-(c) and 1441(a) because Defendant, as a corporation, is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time a civil action is commenced.

## III. Summary of the TCPA and Certain Statutory Definitions

15. The TCPA makes it unlawful for a person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii).

16. 47 CFR 64.1200(a)(1)(iii) provides that "[n]o person or entity may: . . . initiate any telephone call (other than a call . . . made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) To any telephone number assigned to a paging service, cellular

telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."

17. In enacting the TCPA, Congress wrote that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." Telephone Consumer Protection Act of 1991, Pub. L. 102–243, §§ 2, ¶¶ 5, 10, 12, 13, 105 Stat. 2394 (1991) (emphasis supplied).

18. Section 227(a)(1) of the TCPA defines the term "automatic telephone dialing system" (hereafter "ATDS") to mean "equipment which has the capacity - (A) to store or produce telephone number to be called, using a random or sequential number generator' and (B) to dial such numbers."

19. Pursuant to 47 CFR § 64.1200(f)(8), the term "prior express written consent" means:

> an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

20. Section 64.1200(f)(8) states that a written agreement shall:

> (i) . . . include a clear and conspicuous disclosure informing the person signing that:
>
> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

21. Plaintiff did not consent to allow Defendant to call her cellular telephone numbers with an ATDS.

22. Defendant knew or should have known that a person's consent was required before it could call a person's cell phone number with an ATDS.

23. Defendant knew or should have known that a person's consent was required before it could call a person's cell phone number and play or leave a pre-recorded message.

24. Defendant called Plaintiff's cellular phone and that of other people with an ATDS without first obtaining their consent.

25. Defendant called Plaintiff's cellular phone and that of other people and left pre-recorded messages without first obtaining their consent.

26. Defendant did not stop calling Plaintiff with an ATDS despite her telling to Defendant to stop calling her.

27. Defendant did not stop calling Plaintiff and leaving pre-recorded messages despite her telling Defendant to stop calling her.

28. Alternatively, to the extent Defendant contends that it somehow obtained Plaintiff's consent to call her with an ATDS, Plaintiff explicitly revoked any consent purportedly provided when she answered Defendant's collection calls placed or initiated by Defendant (or made on Defendant's behalf) where Plaintiff stated that she did not want to be called with an automated dialer.

29. On information and belief, Defendant did not stop calling other persons ("Class Members") with an ATDS after Class Members told Defendant to stop calling them.

30. On information and belief, Defendant did not stop calling Class Members with pre-recorded messages after Class Members told Defendant to stop calling them.

31. Defendant did not have a system in place to stop Defendant from continuing to make ATDS based calls after Plaintiff and other Class Members told Defendant to stop calling.

## IV. Summary of Defendant's Telephone Calls and General Practices

32. In the calls Plaintiff answered, Plaintiff was greeted by a noticeable period of "dead air" while Defendant's telephone system attempted to connect Plaintiff to a live agent.

33. On information and belief, when Class Members answered Defendant's calls, Class Members were greeted by a noticeable period of "dead air" while Defendant's telephone system attempted to connect Class Members to live agents.

34. In most calls, there would be an approximate three second pause between the time Plaintiff said "hello?", and when a person working for Defendant responded to Plaintiff's greeting.

35. On information and belief, when Class Members would answer Defendant's calls, Class Members would experience similar pauses between the time they answered "hello?", and when a person working for Defendant responded to a Class Member's greeting.

36. Plaintiff has also answered calls where she has heard background noise and sounds that exist in a call center where multiple people are speaking on other calls in close proximity to each other.

37. On information and belief, when Class Members would answer Defendant's calls, Class Members would hear similar background noises when they answered Defendant's calls.

38. In some of the calls Plaintiff answered, Plaintiff would be greeted by a pre-recorded message asking her to "please hold."

39. On information and belief, Defendant left similar pre-recorded "please hold" messages when Class Members answered Defendant's calls.

40. When Plaintiff did not answer Defendant's calls, Defendant would often leave Plaintiff a pre-recorded voice mail message stating, "Hello we have an important message from Northwest Collectors, Inc. this message is from a debt collector please call 877-297-7246 Monday through Friday 8:30 AM to 5 PM central standard time thank you."

41. On information and belief, Defendant left similar pre-recorded voice mail messages on the voice-mails of Class Members.

42. The phone number that Defendant most often used to contact Plaintiff is (847) 255-8300, but upon information and belief, Defendant used other phone numbers to contact Plaintiff.

43. As a general matter, the persons who eventually spoke with Plaintiff would indicate that they were calling from Defendant in an attempt to collect a debt resulting from a traffic violation.

44. Defendant's harassing phone calls have severely disrupted Plaintiff's daily life and general well-being.

## V. Plaintiff Has Been Injured by Defendant's Calls

45. Plaintiff owns her cellular telephone number and is responsible for paying for her cell phone service.

46. Defendant's illegal phone calls have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance and intrusion upon seclusion.

47. Defendant's illegal phone calls have caused Plaintiff actual harm by diminishing her use of her cellular telephone, power and battery consumption, wear and tear caused to her cellular telephone, reduced battery charge life, and the per-

kilowatt electricity costs required to recharge her cellular telephone as a result of increased usage of her telephone services.

48. Defendant's illegal phone calls have caused Plaintiff dread answering her phone for fear that Defendant is calling.

49. Defendant's phone harassment campaign and illegal collection activities have also caused Plaintiff to suffer harassment, emotional distress, anxiety, loss of concentration and time-wasting of daily aspects of life.

50. In addition, each time Defendant placed a telephone call to Plaintiff, Defendant occupied Plaintiff's telephone number such that Plaintiff was unable to receive other phone calls.

51. Based upon Plaintiff's experience with Defendant's harassing calls, upon information and belief, Class Members were similarly harassed.

## VI. Causes of Action

### Count I - Individual Claim for Violating § 227(b)(1)(A)(iii) of the TCPA

52. Plaintiff incorporates the above paragraphs as if fully set forth above.

53. Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful to use an "automatic telephone dialing system" or an "artificial or prerecorded voice" to call a person's cellular telephone number "with[out] the prior express consent of the called party."

54. Plaintiff never provided "prior express written consent" to Defendant to allow or otherwise authorize it to call her cellular number with an "automatic telephone dialing system or an artificial or prerecorded voice."

55. Plaintiff never signed any document that contained any of the requirements set forth by 47 CFR § 64.1200(f)(8).

56. Without Plaintiff's prior express invitation or permission, Defendant presumably and plausibly called Plaintiff's cellular number with an "automatic

telephone dialing system" or "autodialer" for the purpose of collecting on the subject debt.

57. Plaintiff never gave Defendant permission to call her with an ATDS.

58. Defendant called Plaintiff's cellular number with an ATDS because many of the calls placed by Defendant resulted in dead air and long, unanswered pauses before a human would respond to Plaintiff's repeated "hello?" requests.

59. Defendant plausibly utilized an ATDS to randomly dial Plaintiff's cellular telephone number, because Plaintiff did not provide Defendant with her cellular telephone number prior to any calls being placed by Defendant.

60. Alternatively, Defendant plausibly utilized an ATDS to sequentially dial Plaintiff's cellular telephone number (from a set of stored numbers), because Plaintiff did not provide Defendant with her cellular telephone number prior to any calls being placed by Defendant.

61. Defendant used an ATDS to place calls to Plaintiff's cellular telephone number based upon the frequency and persistence of the above described calls.

62. Defendant used an ATDS to place calls to Plaintiff's cellular telephone number because many of the calls resulted in Plaintiff hearing "please hold" in the form of a pre-recorded message.

63. Defendant used an ATDS to place calls to Plaintiff's cellular telephone number because many of the calls resulted in Defendant leaving pre-recorded messages on Plaintiff's cellular number's voice-mail.

64. As discussed above and asserted in the following Counts, the manner in which Defendant plausibly utilized and ATDS to call Plaintiff took place according to Defendant's customs and practices.

65. Alternatively, if Defendant used "voice drop" technology in an attempt to suppress an actual call to Plaintiff's cellular number but the technology resulted in a pre-recorded message appearing in Plaintiff's voice-mail, this technology would still violate the TCPA because the technology would have still involved the use of an ATDS based call and/or a call that resulted in the delivery of a pre-recorded message without Plaintiff's consent.

66. As a result of these violations, Plaintiff is entitled to at least $500 per violation as provided by 42 U.S.C. § 227(b)(3)(B)-(C).

WHEREFORE, Plaintiff is entitled to the following relief:

a. Declare that the telephone calls placed by Defendant to Plaintiff's cellular telephone number violated the TCPA;

b. Award Plaintiff statutory damages of at least $500 for each violation ATDS and pre-recorded message based calls, for a total of $500.00; and

c. Enjoin Defendant from future violations of the TCPA.

**Count II - Individual Claim for Willful Violations § 227(b)(1)(A)(iii)**

67. Plaintiff incorporates the above paragraphs (and in particular the allegations contained within Count I) as if fully set forth above

68. As set forth above, Defendant used an ATDS to place calls to Plaintiff's cellular telephone number.

69. As a result of Defendant repeatedly calling Plaintiff after she told Defendant to stop calling her, Plaintiff is entitled to $1,500 per violation as provided by 42 U.S.C. § 227(b)(3)(B)-(C).

70. Plaintiff estimates that Defendant has called her at least 10 times since she first told Defendant to stop calling her.

WHEREFORE, Plaintiff is entitled to the following relief:

a. Declare that the telephone calls placed by Defendant to Plaintiff's cellular telephone number violated the TCPA;

b. Award Plaintiff statutory damages of $1,500 for each violation after Plaintiff told Defendant to stop calling her for a total of $15,00.00; and

c. Enjoin Defendant from future violations of the TCPA.

**Count III – Illinois Based Class Action For Violating § 227(b)(1)(A)(iii)**

71. Plaintiff incorporates the above paragraphs as if fully set forth above.

72. At least forty persons in the State of Illinois were plausibly called by an ATDS in a similar manner to how Plaintiff was called with an ATDS.

73. At least forty persons in the State of Illinois were plausibly called by an ATDS where the calls to these persons resulted in a pre-recorded message which stated "please hold".

74. At least forty persons in the State of Illinois were plausibly called by an ATDS where the calls to these persons resulted in pre-recorded messages being left in the voice-mails of their cellular phones.

75. Consistent with the types of calls received by Plaintiff, including the frequency and manner in which the calls were received by Plaintiff, Defendant called at least forty (40) cellular phone subscribers in the State of Illinois with an ATDS, as defined by the TCPA , for the purpose of collecting on a debt, and did so without the consent of the persons called.

76. Alternatively, if Defendant used "voice drop" technology in an attempt to suppress an actual call to cellular numbers of Class Members but the technology resulted in a pre-recorded message appearing in the voice-mails of Class Members, this technology would still violate the TCPA because the technology would have still involved the use of an ATDS based call and/or a call that resulted in the delivery of a pre-recorded message without the consent of the Class Members.

77. Plaintiff seeks relief on behalf of all similar situated residents of the State of Illinois who can be defined as follows:

> all residents of the State of Illinois who were called on their cellular phones within the last four years by Defendant where Defendant placed the calls using an ATDS and Defendant was unable to furnish express prior consent of the called party before the calls were placed.

78. A defendant in a TCPA action bears the burden of demonstrating consent.

79. It is Defendant's burden and obligation to exclude from these proposed classes people who consented to the calls and messages in question.

WHEREFORE, Plaintiff and similarly situated putative Class Members are entitled to the following relief:

a. Declare that the telephone calls placed by Defendant to residents of Illinois violated the TCPA;

b. Award statutory damages of at least $500; and

c. Enjoin Defendant from future violations of the TCPA.

**Count IV – Illinois Class Action For Willful Violations of § 227(b)(1)(A)(iii)**

80. Plaintiff incorporates the above paragraphs (and in particular the allegations set forth in Count III) as if fully set forth above.

81. Consistent with the types of calls received by Plaintiff, including the frequency and manner in which the calls were received by Plaintiff, Defendant called at least forty (40) cellular phone subscribers in the state of Illinois with an ATDS, as defined by the TCPA , for the purpose of collecting on a debt, and did so without the consent of the persons called.

82. Plaintiff seeks relief on behalf of all similar situated residents of the State of Illinois who can be defined as follows:

83. All residents of the State of Illinois who were called on their cellular phones within the last four years by Defendant where Defendant placed the calls using an ATDS or with a

pre-recorded message *after* the called parties told Defendant to stop calling.

84. All ATDS based calls place to Class Members after Class Members told Defendant to stop calling should result in liability of $1,500 per offense.

85. A defendant in a TCPA action bears the burden of demonstrating consent.

86. It is Defendant's burden and obligation to exclude from these proposed classes people who consented to the calls and messages in question.

WHEREFORE, Plaintiff and similarly situated putative Class Members are entitled to the following relief:

a. Declare that the telephone calls placed by Defendant to residents of Illinois violated the TCPA;

b. Award statutory damages to Class Members $1,500 for each violation; and

c. Enjoin Defendant from future violations of the TCPA.

**Count V – Nationwide Class Action For Violations of § 227(b)(1)(A)(iii) of the TCPA**

87. Plaintiff incorporates the above paragraphs as if fully set forth above.

88. Well over forty persons in the United States were plausibly called by an ATDS in a similar manner to how Plaintiff was called with an ATDS.

89. Well over forty persons in the United States were plausibly called by an ATDS where the calls to these persons resulted in a pre-recorded message which stated "please hold".

90. Well over forty persons in the United States were plausibly called by an ATDS where the calls to these persons resulted in pre-recorded messages being left in the voice-mails of their cellular phones.

91. Consistent with the types of calls received by Plaintiff, including the frequency and manner in which the calls were received by Plaintiff, Defendant called

well over forty (40) cellular phone subscribers in the in the United States with an ATDS, as defined by the TCPA , for the purpose of collecting on a debt, and did so without the consent of the persons called.

92. Alternatively, if Defendant used "voice drop" technology in an attempt to suppress an actual call to cellular numbers of Class Members but the technology resulted in a pre-recorded message appearing in the voice-mails of Class Members, this technology would still violate the TCPA because the technology would have still involved the use of an ATDS based call and/or a call that resulted in the delivery of a pre-recorded message without the consent of the Class Members.

93. Plaintiff seeks nationwide relief on behalf of all similar situated persons in the United States who can be defined as follows:

> all persons in the United States with United States based telephone numbers who were called on their cellular phones within the last four years by Defendant where Defendant placed the calls using an ATDS and Defendant was unable to furnish express prior consent of the called party before the calls were placed.

94. A defendant in a TCPA action bears the burden of demonstrating consent.

95. It is Defendant's burden and obligation to exclude from these proposed classes people who consented to the calls and messages in question.

WHEREFORE, Plaintiff and similarly situated putative Class Members are entitled to the following relief:

a. Declare that the telephone calls placed by Defendant to residents of Illinois violated the TCPA;

b. Award statutory damages to Class Members $500 for each violation; and

c. Enjoin Defendant from future violations of the TCPA.

**Count VI – Nationwide Class Action For Willful Violations of § 227(b)(1)(A)(iii)**

96. Plaintiff incorporates the above paragraphs (and in particular the allegations set forth in Count V) as if fully set forth above.

97. Consistent with the types of calls received by Plaintiff, including the frequency and manner in which the calls were received by Plaintiff, Defendant called at least forty (40) cellular phone subscribers in the United States with an ATDS, as defined by the TCPA , and did so without the consent of the persons called.

98. Plaintiff seeks nationwide relief on behalf of all similar situated persons in the United States who can be defined as follows:

> all persons in the United States with United States based telephone numbers who were called on their cellular phones within the last four years by Defendant where Defendant placed the calls using an ATDS or with a pre-recorded message *after* the called parties told Defendant to stop calling.

99. All ATDS based calls place to Class Members after Class Members told Defendant to stop calling should result in liability of $1,500 per offense.

100. A defendant in a TCPA action bears the burden of demonstrating consent.

101. Accordingly, it is Defendant's burden and obligation to exclude from these proposed classes people who consented to the calls and messages in question.

WHEREFORE, Plaintiff and similarly situated putative Class Members are entitled to the following relief:

a. Declare that the telephone calls placed by Defendant violated the TCPA;

b. Award Class Members $1,500 for each violation where there calls placed after Class Members told Defendant to stop calling; and;

c. Enjoin future violations of the TCPA.

## VII. THIS CASE CAN BE MAINTAINED AS A CLASS ACTION

102. Plaintiff can satisfy the elements of Federal Rule of Civil Procedure 23.

103. Plaintiff reserves the right to modify the above class definitions in response to any argument advanced by Defendant that may contend that one or more of the above classes constitute so-called "failsafe" classes.

**A. Numerosity and Ascertainability**

104. Numerosity is satisfied because Defendant called at least forty (40) residents of Illinois in the same manner that Defendant called Plaintiff through-automated dialing technology prohibited by the TCPA: by (a) automated dialing technology prohibited by the TCPA – either through an ATDS; (b) without consent of the person called; (c) after consent was revoked; or (d) after the called party told Defendant to stop calling.

105. Joinder of the hundreds, and likely thousands, of Class Members is impracticable.

106. The putative Class Members can be administratively ascertained from business records maintained by the Defendant. *See, e.g., In re Community Bank of Northern Virginia Mortg. Lending Practices Litigation*, 795 F.3d 380, 397 (3d Cir. 2015) (finding that the Plaintiff's proposed class was ascertainable because the defendant "possesse[d] all of the relevant bank records needed to identify the putative class members").

**B. Commonality and Predominance**

107. The elements of is commonality and predominance are satisfied.

108. Commonality exists because Defendant acted in a common manner toward Plaintiff and the proposed Class Members by calling Plaintiff and the proposed Class Members in the same way: (a) through-automated dialing technology prohibited by the TCPA – either through an ATDS; and (b) without consent of the person called.

109. Defendant also acted in a common manner Plaintiff and the proposed Class Members by calling Plaintiff and the proposed Class Members (c) after the called party told Defendant to stop calling; or (d) after any potential prior consent was revoked.

110. There are questions of law and fact common to the claims of Plaintiff and members of the proposed classes, including;

a. whether the dialing systems used by the Defendant qualifies as an ATDS or a predictive dialer under the TCPA;

b. whether Defendant violated the TCPA;

d. whether Defendant can demonstrate consent; and

e. whether the conduct described herein was intentional so as to warrant treble or punitive damages of up to $1,500 per call.

**C. Typicality**

111. Plaintiff's claims are typical of the claims of the proposed Class, as the calls that Defendant placed were the same or substantially similar to those received by the proposed Class Members.

112. Plaintiff and the proposed Class Members' claims all arise from the same operative facts and are based on the same legal causes of action.

113. Plaintiff and each of the proposed Class Members are all subject to the same illegal calling techniques employed by Defendant.

**D. Appropriateness and Superiority**

114. A class action is an appropriate method for the fair and efficient adjudication of this controversy, and superior to other available methods for the fair and efficient adjudication of this controversy.

115. The common questions of law and fact enumerated above predominate over questions affecting only individual Class Members.

116. The likelihood that individual Class Members will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, as well as the absence of a fee shifting mechanism.

117. As such, the expense and burden of individual litigation would make it impracticable for proposed Class Members to prosecute their claims individually.

**E. Plaintiff and Class Counsel Are Adequate**

118. Plaintiff and proposed class counsel will fairly, adequately and vigorously represent and protect the interests of the proposed Class Members and has/have no interest antagonistic to those of the putative classes.

119. There are no defenses unique to Plaintiff.

120. Plaintiff's lead attorney (James C. Vlahakis) is an experienced consumer class action litigator. On May 15, 2018, Mr. Vlahakis was was appointed to the Steering Committee in a nationwide class action against Apple, Inc., *In Re: Apple Inc. Device Performance Litigation*, 18-md-02827 (N.D. Cal. May 15, 2018) (Dkt. Entry no. 99).

121. Mr. Vlahakis has defended over a hundred consumer-based claims since 1998, and has litigated well over forty TCPA based putative class actions. For example:

a. In conjunction with class counsel, Mr. Vlahakis has obtained Court approval of numerous TCPA class actions. *See, e.g., In Re Capital One Telephone Consumer Protection Act Litigation*, 2012-cv-10064 (N.D. Ill.) ($75 million dollar TCPA based automated dialing system settlement); *Prater v. Medicredit, Inc.*, 2014-cv-0159 ($6.3 million dollar TCPA based automated dialing system wrong party settlement); *INSPE Associates v. CSL Biotherapries, Inc.* (N.D. Ill.) ($3.5 million fax based settlement);

b. Additionally, Mr. Vlahakis (as a former consumer class action defense attorney) has gained court approval of dozens of FDCPA class actions;

c. Mr. Vlahakis understands the types of defenses defendants typically raise in TCPA class actions. For example, in his former role as defense attorney:

i. Mr. Vlahakis defeated a putative plaintiff's attempt to certify a TCPA class action in *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013), reconsideration denied, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013); and

ii. in *Pesce v. First Credit Services, Inc.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012), Mr. Vlahakis has caused a previously certified TCPA class action to be decertified based upon proving up an individualized issue which militated against commonality and typicality;

d. In litigating TCPA class actions, Mr. Vlahakis has ascertained the identities of putative class members individually and in conjunction with industry experts;

e. Mr. Vlahakis has also filed and argued petitions for declaratory relief before the FCC;

f. Mr. Vlahakis has never had a state attorney general or U.S. Attorney General for any district object to a case where Mr. Vlahakis and class counsel have jointly petitioned a district court for certification; and

g. Lastly, Mr. Vlahakis has utilized third-party class notice providers to issue notice and payments to class members.

122. Defendant is not aware of any circumstances that would render Mr. Vlahakis to be unqualified to be class counsel in this case.

**F. Injunctive and Declaratory Relief Are Warranted**

123. FRCP 23(b)(2) provides that injunctive and declaratory relief are proper where "the party opposing the class has acted or refused to act on grounds that apply generally to the class."

124. Here, the above violations apply generally to the proposed classes.

125. For the above reasons, this Court should declare Defendant's misconduct unlawful and enjoin Defendant from further violating the TCPA.

126. As a result of these violations, Plaintiff and each class member is entitled to $500 per violation and up to $1,500 per violation.

WHEREFORE, Plaintiff and similarly situated putative Class Members are entitled to the following relief:

a. Declaratory relief in the form of declaring that the telephone calls placed by Defendant violated the TCPA;

b. Awarding statutory damages of at least $500;

c. Awarding $1,500 for each violation where there calls placed after the called parties told Defendant to stop calling; and

d. Injunctive relief to prohibit future violations of the TCPA.

***Plaintiff hereby demands a trial of this civil action by jury.***

Plaintiff SARAH SCHMIEDER, individually
and on behalf of all others similarly situated,

*/s/ James C. Vlahakis*
James Vlahakis
SULAIMAN LAW GROUP, LTD.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 581-5456 telephone
jvlahakis@sulaimanlaw.com